UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CLUCHEY,                          Case No. 16-13479

Plaintiff,                                Linda V. Parker
     v.                                United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 22)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On September 26, 2016, plaintiff Richard Cluchey filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Linda V. Parker referred this matter to the undersigned for the purpose of

reviewing the Commissioner's partially favorable decision denying plaintiff's

claim for a period of disability and disability insurance benefits.  (Dkt. 4).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 15, 22).

### B.  Administrative Proceedings

Plaintiff filed an application for a period of disability and disability

insurance benefits on January 7, 2014, alleging disability beginning on December

13, 2012.  (Tr. 16).[1]  The claims were initially disapproved by the Commissioner

on March 7, 2014.  (*Id.*).  Plaintiff requested a hearing and on July 17, 2015,

plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Dennis

M. Matulewicz, who considered the case *de novo*.  (*Id.*).  In a decision dated

August 17, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 23).  Plaintiff

requested a review of this decision.  (Tr. 12).  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council, on August 15, 2016,

denied plaintiff's request for review.  (Tr. 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

     For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

     Plaintiff, born May 9, 1957, was 55 years old on the alleged disability onset

date.  (Tr. 244).  He has past relevant work as an IT specialist.  (Tr. 23).  The ALJ

applied the five-step disability analysis and found at step one that plaintiff had not

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr.", referring to the administrative record page number found in the lower right corner of each page.

engaged in substantial gainful activity since December 13, 2012, the alleged onset

date.  (Tr. 18).  At step two, the ALJ found that plaintiff's status post aortic and

atrial valve replacement and atrial fibrillation were "severe" within the meaning of

the second sequential step.  (Tr. 19).  However, at step three, the ALJ found no

evidence that plaintiff's impairments singly or in combination met or medically

equaled one of the listings in the regulations.  (Tr. 20).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except the claimant can never climb
> ladders, ropes or scaffolds; should avoid even moderate
> exposure to extreme heat, cold, wetness, humidity and
> vibrations and should avoid even moderate exposure to
> fumes, odors, dust, gases or poor ventilation.

(Tr. 20).  At step four, the ALJ found that plaintiff was able to perform his past

relevant work as an IT specialist.  (Tr. 23).  Therefore, the ALJ denied plaintiff

benefits.  (*Id.*).

B.    Plaintiff's Claims of Error

Plaintiff argues first that the ALJ erred by failing to consider his facet

arthropathy and obstructive sleep apnea to be severe impairments at Step Two.

(Dkt. 15, at p. 15).  Plaintiff acknowledges that an impairment is severe if it

significantly limits one's physical or mental ability to do basic work activities.

3

(*Id.*) (citing 20 C.F.R. §404.1520(c)).  Plaintiff claims his facet arthropathy is a severe impairment because three years' worth of chiropractic records show pain upon range of motion in the spine, pain with flexion, an impaired gait, and tenderness upon palpitations at all levels in the spine.  (*Id.* at p. 16).  Further, he testified that he can only stand for about thirty minutes due to his back pain and that he has to lie down because of back pain.  (*Id.*).  Plaintiff claims that a lumbar spine x-ray and his continued chiropractic treatment show that his facet arthropathy is a severe impairment.  (*Id.* at p. 16-17).

As to his obstructive sleep apnea, plaintiff claims that progress notes in January and May 2015 indicate excessive daytime sleepiness and that he had non-restorative sleep.  (*Id.* at p. 17).  Those notes also indicate that plaintiff takes a one to two-and-a-half-hour nap during the day.  (*Id.*).  He testified that his fatigue has become worse and that it is one of the main reasons he cannot go back to work and that he wakes up around 9:30 a.m. and has to take a nap by 2:30 p.m.  (*Id.*).  Plaintiff also noted that his stamina and mental capacity has deteriorated and that he cannot focus.  (*Id.*).  Thus, according to plaintiff, his sleep apnea should have been considered a severe impairment.

Second, plaintiff argues that even if it were proper to determine that his facet arthropathy and obstructive sleep apnea were nonsevere impairments, the ALJ erred in failing to consider all of his impairments, severe and nonsevere,

4

throughout the sequential review process.  (*Id.* at p. 18).  Plaintiff acknowledges that the ALJ discussed why his facet arthropathy and sleep apnea were nonsevere, but he claims the ALJ did not consider the limiting effects of those impairments in Step Four or Step Five.  (*Id.*).  As plaintiff points out, it is well-settled law that if the ALJ finds a severe impairment at Step Two and proceeds to continue through the remaining steps of the analysis, failure to identify another impairment as severe is harmless, as long as the ALJ considered the entire record in his decision.  (*Id.*) (citing *Sheehy v. Comm'r of Soc. Sec.*, 2015 WL 6394780, at *4 (W.D. Mich. Oct. 21, 2015)).  Plaintiff argues that failure to consider these impairments throughout the analysis was harmful error because inclusion of the limitations caused by them would render plaintiff disabled.  (*Id.* at p. 19).  Specifically, the inclusion of his sleep apnea limitations would limit him to light unskilled work which, under Medical Vocational Rule 202.06, would direct a finding of disability.  (*Id.*).  And, inclusion of the limitations caused by facet arthropathy render him disabled pursuant to Medical Vocational Rule 201.06.  (*Id.*).

Finally, plaintiff argues that the ALJ failed to create an accurate RFC and therefore erroneously found work at Step Five.  Plaintiff argues that the RFC does not include the entirety of his documented limitations.  (*Id.* at p. 20).  The limitations caused by facet arthropathy and obstructive sleep apnea would include an inability to stand/walk for extended periods and fatigue causing a lack of

concentration.  (*Id.* at 20-21).  Inclusion of these limitations would direct a finding

of disabled under the Medical Vocational Rules.  (*Id.* at p. 21).

      C.    <u>Commissioner's Motion for Summary Judgment</u>

      The Commissioner argues first that the ALJ properly found plaintiff's facet

arthropathy and sleep apnea nonsevere, and even if it that finding was erroneous,

the error was harmless.  (Dkt. 22, at p. 10).  Plaintiff alleges disability due to

extreme back pain, but records show he never took medication for the pain, that he

often denied back pain to treating doctors, and never sought more than chiropractic

treatment.  (*Id.* at p. 11).  The ALJ acknowledged x-rays of plaintiff's back and his

chiropractic treatment, and reasonably concluded that the back pain caused no

significant work limitations.  (*Id.* at p. 11-12).  Further, plaintiff never pursued

treatment for his sleep apnea, suggesting that sleep apnea did not cause significant

limitations.  (*Id.* at p. 12).  The ALJ noted that the RFC was based on all the

evidence of plaintiff's impairments, severe and nonsevere, and considered

limitations from all of his symptoms.  (*Id.*).

      The Commissioner also challenges the evidence plaintiff relies on to prove

severe impairment.  According to the Commissioner, subjective complaints and

chiropractic treatment do not prove that plaintiff's facet arthropathy caused

significant work limitations.  (*Id.* at p. 13).  Diagnosis alone says nothing about the

severity of the impairment.  *Id.* (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

1988).  Plaintiff did not pursue medical treatment or take medication for his back pain.  (*Id.*).  Thus, the ALJ reasonably found facet arthropathy nonsevere.  (*Id.*). Further, plaintiff's self-reported naps do not prove that his sleep apnea caused significant work limitations.  (*Id.* at p. 14).  As with his back pain, plaintiff did not pursue medical treatment for his sleep apnea.  (*Id.*).  Further, no doctor stated that he needed to take naps due to sleep apnea.  (*Id.*).  The Commissioner acknowledged that Dr. DeGregorio noted that plaintiff would need to break every 30 minutes to lie down for an hour due to his cardiac condition, but the ALJ found that this opinion conflicted with Dr. DeGregorio's own treatment notes which stated plaintiff had minimal symptoms.  (*Id.* at n. 3).  Plaintiff attributed his naps to his cardiac condition or anemia, not sleep apnea.  (*Id.*).

The Commissioner contends that no further limitations were needed in the RFC.  (*Id.* at p. 15).  The Commissioner relies on the ALJ's note of minimal treatment for facet arthropathy and sleep apnea, the fact that plaintiff did not pursue medical treatment for facet arthropathy, and the fact that he did not follow the physician's recommended treatment for sleep apnea.  (*Id.*).  It is plaintiff's burden of showing RFC limitations, and he has not shown further limitations were needed.  (*Id.*).

D.   Plaintiff's Reply

In reply, plaintiff reiterates his claim that his facet arthropathy and sleep apnea are severe impairments and that the ALJ failed to account for limitations caused by these impairments throughout the sequential review process.  (Dkt. 23, at p. 2).  Plaintiff argues that, although he did not see a "traditional physician" for his back pain, pursuing and receiving chiropractic treatment for an extended period of time shows that the impairment is severe.  (*Id.*).  Further, there is nothing in 20 CFR § 404.1522 stating that an impairment is nonsevere because the claimant is not taking medication.  (*Id.*).

As to his sleep apnea, plaintiff states that he did seek treatment from a physician and was in the process of getting a "CPAP" machine but put it on hold.  (*Id.* at p. 3).  According to plaintiff, one can assume that having the need for a CPAP machine would render one's sleep apnea impairment severe.  (*Id.*).  Plaintiff argues that there is objective evidence and treatment notes showing he has sleep apnea, non-restorative sleep, and excessive daytime sleepiness.  (*Id.*) (citing Tr. 494, 520, 522).

## III.   DISCUSSION

A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

11

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

> basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.   <u>Analysis and Conclusions</u>

        1.   Legal Standards

At step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  The applicant bears the burden of establishing the

existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

Sixth Circuit precedent establishes that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are

severe is not in itself cause for reversal.  But this is true only so long as the ALJ

considers the effects of all of the claimant's medically determinable impairments,

both those he deems severe and those not severe.") (internal quotation marks

omitted); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where

ALJ identified one severe impairment at step two, the failure to identify additional

severe impairments at step two was harmless error in child disability case where

the ALJ considered all of the plaintiff's impairments at other steps as demonstrated

by discussion of testimony and medical history.).

### 2.     Obstructive Sleep Apnea

In assessing plaintiff's impairments at Step Two of the sequential evaluation

process, the ALJ acknowledged plaintiff's obstructive sleep apnea diagnosis.  (Tr.

19).  However, the ALJ reasoned that because plaintiff had not followed up on a

recommended "CPAP" study and denied choking or gasping for air during sleep,

his sleep apnea was not a severe impairment.  (Tr. 19).  The ALJ also noted that

the record does not demonstrate any secondary issues that would reasonably

support functional limitations.  (*Id.*).  The ALJ did not discuss plaintiff's sleep

apnea at any point in his decision beyond Step Two.  As stated above, failure to

consider this impairment at the remaining steps of the sequential evaluation

process would normally constitute reversible error.  However, in this instance, the

ALJ's error is harmless.  Although plaintiff was diagnosed with sleep apnea (Tr.

520-25), there is no medical opinion in the record assessing functional limitations

caused by sleep apnea. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio

Oct. 4, 2011) (citing *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146,151

(6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate

the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc.

Sec.*, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and

recommendation adopted*,  2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting

*Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence

in the record, of any functional limitations as a result of . . . obesity that the ALJ

failed to consider,' a remand for further resolution of this issue is unnecessary.").

There are no functional limitations in the record attributed or related to sleep

apnea that should have been included in the RFC.  *See Hill v. Comm'r of Soc. Sec.*,

560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the

functional limitations imposed by a condition, not the mere diagnosis of it.").

Where there is a lack of functional limitations due to an impairment in the record,

any failure to discuss the impairment after Step Two of the sequential analysis is

harmless.  In *Smith v. Comm'r of Soc. Sec*, the ALJ determined that the plaintiff's

brain lesions were nonsevere based on a finding that the lesions had not changed

since 2008, and a lack of evidence that the plaintiff was limited by any

neurological disorder.  *Smith,* 2016 WL 423757, at *6 (E.D. Mich. Jan. 12, 2016),

*report and recommendation adopted*, 2016 WL 409316 (E.D. Mich. Feb. 3, 2016).
However, the ALJ had misinterpreted the medical evidence. *Id.* Further, the ALJ
did not discuss the plaintiff's brain lesions at any point in the decision after Step
Two. *Id.* Nevertheless, the court held that the ALJ's error was harmless because
the plaintiff's neurologist did not diagnose a neurological disease or assess
functional limitations as a result of the brain lesions. *Id.*

In *Morrison v. Comm'r of Soc. Sec.*, 2017 WL 4278378 (6th Cir. Jan. 30,
2017), the court discussed the lack of medical evidence on functional limitations
due neck and back pain. *Id.* at* 3. The record contained evidence of slight
abnormalities in the spine and of occasional reports of neck and back pain. *Id.*
However, there was no evidence that those conditions debilitated the plaintiff in
any way or that any physician imposed any limitations as a result of the conditions.
*Id.* "Thus, the absence of any limitation in the RFC to account for this impairment
is supported by substantial evidence." *Id.*

Likewise here, the record does not contain a medical opinion on functional
limitations due to sleep apnea. Plaintiff was diagnosed with moderate obstructive
sleep apnea in March 2015. (Tr. 493-94). However, the diagnosis did not indicate
that plaintiff suffered any functional limitations due to sleep apnea. (*Id.*). In a
January 2015 sleep progress note, the physician discussed with plaintiff the
interaction between obstructive sleep apnea and atrial fibrillation; the physician

also encouraged plaintiff to pursue a nocturnal polysomnogram to assess whether there is underlying sleep disordered breathing.  (Tr. 524).  No functional limitations were assessed.  (Tr. 522-24).  In a May 2015 sleep progress note, plaintiff was again assessed with moderate obstructive sleep apnea, but the progress note gave no functional limitations.  (Tr. 520).  That is the extent of the medical evidence on sleep apnea.

Not only is there a lack of medical evidence on functional limitations, there is also a lack of credible subjective complaints.  The ALJ assessed plaintiff's credibility as "not entirely credible."  (Tr. 21); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (ALJ's credibility assessment is entitled to "great deference," and a claimant's credibility may be properly discounted where an ALJ finds contradictions among medical reports, testimony, and other evidence).  In support of the credibility determination, the ALJ stated that plaintiff's "daily activities are not limited to the extent one would expect given his allegations."  (Tr. 21).  Plaintiff testified that he could not do as much as he used to, but he also testified that he has no problems with personal care, is able to drive a car, shop in grocery stores, go for brief walks and cook in the microwave.  (Tr. 21-22).  Finally, the ALJ pointed to a July 2014 chiropractic questionnaire in which plaintiff indicated that he could do his usual work.  (Tr. 22).  Plaintiff does not challenge the ALJ's credibility determination.  It is noteworthy that plaintiff's

reliance in his brief on his own testimony regarding fatigue from sleep apnea is misplaced.  At the hearing, he stated that he struggles to stay awake, wakes up at 9:30 a.m. and has to take a nap by 2:30 p.m. because of his back and heart problems.  (Tr. 45).  Plaintiff was not discussing difficulty in staying awake due to sleep apnea.  The ALJ fully considered fatigue caused by plaintiff's cardiac conditions and medication side effects in his decision, and plaintiff does not argue otherwise.  (Tr. 18, 21).

Because there is no evidence of functional limitations due to sleep apnea, any error at Step Two is harmless, as was the case in *Smith* and *Morrison*, *supra*. Failure to include limitations in the RFC due to sleep apnea is supported by substantial evidence, as demonstrated above.  Therefore, the undersigned finds no basis to disturb the ALJ's RFC assessment as it pertains to sleep apnea.

### 3.    Facet Arthopathy

It is not clear, contrary to plaintiff's assertion, that the ALJ failed to discuss functional limitations caused by his facet arthropathy after Step Two.  In his Step Two analysis, the ALJ took into consideration plaintiff's allegations of back and neck pain, reports of chiropractic visits, and a lumbar x-ray which showed spurring at L3-L4 and facet arthropathy at L5-S1.  (Tr. 19).   The ALJ noted that there was no medical evidence showing that claimant sought additional treatment for his back pain beyond chiropractic treatment, and that the evidence does not support a

conclusion that his back pain caused more than minimal functional limitations.  As

a result, the ALJ determined that his back pain was a nonsevere impairment.  (*Id.*).

In the RFC analysis, the ALJ stated the following:

> The claimant's chiropractor opined prior to the alleged
> onset date that the claimant had the following work
> restrictions: no bending, lifting or twisting (Exhibit
> B13F).  After the alleged onset date, the same
> chiropractor opined that the claimant could return to
> work with no restrictions (*Id.*).  The undersigned
> accorded little weight to this assessment because it is
> from a non-acceptable medical source (SSR 06-03p).
> Furthermore, the opinion is inconsistent with the record
> as a whole, which shows the claimant has the limitations
> described above due to his heart condition.[2]

(Tr. 22).  Thus, in the quoted passage it appears that the ALJ did consider

functional limitations caused by facet arthropathy or back pain (because he sought

treatment for the condition with a chiropractor and no other physician) but rejected

the opinion discussing those limitations.  (Tr. 22).

In any event, any error at Step Two or in assessing the RFC is harmless

because the record does not establish that plaintiff is more limited than suggested

in the RFC due to facet arthropathy.  *Kocher*, 2015 WL 7307998, at *5 (quoting

*Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence

---

[2] The undersigned reads this last sentence on functional limitations as part of the ALJ's
reason to give the chiropractor's opinions little weight, and not to suggest that plaintiff does
indeed have functional limitations on bending, lifting, or twisting.

in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."). As shown above, plaintiff's chiropractic reports were given little weight.[3]  Plaintiff does not contest this determination.  And, again, the ALJ determined that plaintiff's subjective complaints were not entirely credible.  (Tr. 21).  Aside from the chiropractic reports (which ultimately released plaintiff with no work restrictions, *see* note 3) and plaintiff's complaints, there is no medical evidence in the record supporting or opining on functional limitations caused by facet arthropathy or back pain.[4]

The undersigned notes that plaintiff treated with another chiropractor, Bosman Chiropractic Life Center, but those records also do not contain any opinion on functional limitations.  (Tr. 579-646).  In the Bosman records, the chiropractor lists plaintiff's subjective complaints and explains what techniques were used in each treatment session as well as indicating whether prognosis is good or fair, chiropractic questionnaires that plaintiff filled out, and "Plan of Treatment" documents.  (Tr. 579-646).  In the "Plan of Treatment" documents, the

---

[3] In February 2012, plaintiff's chiropractor at Hamilton Chiropractic gave plaintiff the work restriction of no bending, lifting, or twisting.  (Tr. 533).  Thereafter, between March 2013 and April 2014, the chiropractor said there were no work restrictions due to plaintiff's condition.  (Tr. 539, 545, 550, 555, 559, 566, 569, 576).

[4] For example, other medical evidence commenting on his back includes denials of back pain to treating physicians on various occasions between 2012 and 2015, (Tr. 395, 398, 480, 483), and a physical examination which showed normal muscle strength and tone in his back in 2013.  (Tr. 396).

chiropractor selected from a list of options that plaintiff's care was "acute," which meant that his symptoms were partially or totally debilitating, and that, amongst other treatment goals, one goal is to "attempt to resume restricted/limited vocational and avocational . . . activities." (Tr. 591, 600, 613, 642). However, as the ALJ noted, a chiropractor is not an acceptable medical source. *See Paddock v. Comm'r of Soc. Sec.*, 2012 WL 4356711, at *4 (W.D. Mich. Sept. 24, 2012) (holding that a chiropractor is not an acceptable medical source); 20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Further, the information under "acute" treatment plan is not an acceptable medical opinion. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527. The "acute" plan of treatment does not explain whether plaintiff's symptoms keep him from working at his full capacity now or otherwise describe what he can still do despite his back symptoms. Therefore, these opinions are not medical opinions on plaintiff's functional limitations due to facet arthropathy and these records do not alter the undersigned's recommendation.

The record does not contain a medical opinion setting forth any functional limitations due to facet arthropathy. As in *Smith* and *Morrison*, *supra*, because

there is no medical evidence that plaintiff's facet arthropathy causes any

debilitating limitations beyond those included in the RFC, the absence of any

limitations in the RFC to account for facet arthropathy is not error.  Therefore, any

error at Step Two is harmless because the RFC assessment properly did not include

limitations due to facet arthropathy.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 21, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 21, 2018, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov